UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ANDY ALEXANDER M. A.,[1]
[A# 246-895-116]

        Petitioner,

    v.

WARDEN OF THE CALIFORNIA CITY
CORRECTIONAL CENTER, et al.,

        Respondents.

No. 2:26-cv-00951-TLN-AC

**ORDER**

This matter is before the Court on Petitioner Andy Alexander M. A.'s ("Petitioner") Petition for Writ of Habeas Corpus ("the Petition"). (ECF No. 1.) Respondents filed an opposition. (ECF No. 6.) For the reasons set forth below, the Petition is GRANTED and Respondents are ordered to IMMEDIATELY RELEASE Petitioner.

///

///

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only his first name and last initial, to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

## I.    FACTUAL AND PROCEDURAL BACKGROUND[2]

This matter arises out of Petitioner's challenge to his immigration detention.  Petitioner is a 19-year-old noncitizen who entered the United States as a minor on May 2, 2023.  (ECF No. 1 at 1; ECF No. 6-1 at 2.)  Petitioner was apprehended and processed by immigration authorities as an unaccompanied minor.  (ECF No. 1 at 1.)  On May 15, 2023, Petitioner was released from immigration custody to his brother as his sponsor.  (*Id.* at 49.)  Thereafter, Petitioner filed an application for asylum, which is still pending.  (*Id.* at 1.)  The Government also issued Petitioner a work authorization that is valid through 2030.  (*Id.* at 2.)  Petitioner was employed and paid taxes. (*Id.*)

Petitioner has no criminal history in the United States.  (*Id.*; ECF No. 6-1 at 2.)

On January 7, 2026, Petitioner was working as a co-driver of a commercial vehicle when Florida State Troopers stopped the vehicle for "routine inspection."  (ECF No. 1 at 2, 11.) Petitioner was arrested during the stop, even though Petitioner was not driving, committed no crime, and presented a valid government-issued identification and work authorization.  (*Id*. at 2.) There were no removal proceedings against Petitioner at the time of his arrest; removal proceedings were instituted against Petitioner over a month after he was arrested.  (*Id.* at 14.)

Petitioner was transferred to the custody of U.S. Department of Homeland Security ("DHS").  In DHS custody, he was transferred to four different states, and he is now detained at the California City Correctional Center.  (*Id.* at 5.)  Over his nearly three months of detention, Petitioner has been denied a bond hearing.  (*Id.*)  Petitioner now challenges the lawfulness of his civil detention without a bond hearing.  (ECF No. 1.)

## II.    STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure

---

[2]    The facts are not disputed.  (*See* ECF No. 6 at 1.)

release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

### III.    ANALYSIS

Petitioner claims his detention violates the Immigration and Nationality Act ("INA") and the Fifth Amendment Due Process Clause.  (ECF No. 1 at 7–8.)  The Court addresses each claim in turn.

#### A.  Immigration and Nationality Act

Petitioner claims his detention without a bond hearing violates § 1226(a) of the INA. (ECF No. 1 at 7.)  In opposition, Respondents contend Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2), which does not provide for a bond hearing.  (ECF No. 6 at 2.)

Under the INA, 8 U.S.C. § 1226(a) "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022).  Section 1226(a) provides the Government broad discretion whether to release or detain the individual and it provides several layers of review for an initial custody determination.  *Id.*  It also confers "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Id.* at 1202.  Conversely, § 1225(b)(2) mandates detention during removal proceedings for "applicants for admission" who are "seeking admission" and does not provide for a bond hearing.

Until the U.S. Department of Homeland Security changed its policy in July 2025, the Government consistently applied § 1226(a), not § 1225(b)(2), to noncitizens residing in the United States who were detained by immigration authorities and subject to removal.

The vast majority of courts across this Circuit, including this one, have repeatedly rejected Respondents' argument on the applicability of § 1225(b)(2) to persons like Petitioner who reside in the United States. *See Morales-Flores v. Lyons*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (explaining this Court's reasons for taking this position and collecting cases). "These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [Petitioner], living in the interior of the country." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases). In comparison, "[t]he government's proposed reading of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." *Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (collecting cases).

For these reasons and consistent with this Court's numerous prior rulings, the Court finds Petitioner is not an applicant for admission subject to mandatory detention under § 1225(b)(2). Rather, Petitioner's detention is governed by § 1226(a) and he is entitled to the process required by that provision including, at minimum, a bond hearing.

In nearly three months of detention, Respondents have not provided any such bond or custody hearing. Therefore, Respondents violated § 1226(a) of the INA.

### B. Fifth Amendment Due Process Clause

Petitioner also claims that his detention violates due process. (ECF No. 1 at 7.) The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). These due process rights extend to immigration proceedings and detention. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there

4

exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

### i. Liberty Interest

As for the first step, the Court finds Petitioner has established a protectable liberty interest. *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at \*8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause"). "[T]he government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original). "Accordingly, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at \*6 (N.D. Cal. Sept. 12, 2025). To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at \*3 (E.D. Cal. Sept 9, 2025).

Here, Petitioner gained a liberty interest in his continued freedom after he was released from immigration custody in 2023. Under *Morrisey*, this release implied a promise that he would not be re-detained, during the pendency of his immigration proceedings, if he abided by the terms of his release. Respondents do not contend that Petitioner violated the conditions of his release. (*See* ECF No. 6.) As this Court has found previously, along with many other courts in this district when confronted with similar circumstances, Petitioner has a clear interest in his continued freedom as he awaits the outcome of his immigration proceedings. *See, e.g., Doe v.*

*Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

In opposition, Respondents argue Petitioner has no liberty interest because his detention is mandated by statute.  (ECF No. 6 at 2.)  However, as the Court found above, Petitioner is not an application for admission subject to mandatory detention under 8 U.S.C. § 1225(b)(2), rather he is subject to § 1226(a).  Thus, Petitioner maintains his protected liberty interest protected by due process.  The Court next turns to the procedural safeguards that were owed to Petitioner.

### ii. Procedures Required

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

First, Petitioner has a substantial private interest in remaining free from detention.  As discussed above, Petitioner was out of custody for nearly three years.  Despite his interest in maintaining his liberty, Petitioner has now been detained for nearly three months without any notice or opportunity to be heard.  Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention.  *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any process, either pre- or post-detention.  Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions."  *Hernandez*, 872 F.3d at 994; *see also R.D.T.M.*, 2025 WL 2617255, at *4 ("Civil immigration detention, which is nonpunitive in purpose and effect is justified when a noncitizen presents a risk of flight or danger

to the community.") (cleaned up).  Here, Petitioner was not subject to a final order of removal, indeed, there were no removal proceedings pending against him at the time of his detention.  And Respondents do not contend Petitioner is a danger or a flight risk.  (*See* ECF No. 6.)  Without any showing by the Government of a legitimate interest to detain Petitioner, the Court finds there is a serious likelihood Petitioner could be erroneously deprived of his liberty interest.  Without any procedural safeguards to determine whether his detention was justifiable, the probative value of additional procedural safeguards is high.  *R.D.T.M.*, 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal.  *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025).  The cost and time of procedural safeguards are minimal here.  Notice and custody determination hearings are routine processes for Respondents.  Indeed, they are the very processes required under 8 U.S.C. § 1226(a).  Any delay in detention (if justified) for the time to provide notice and a hearing would have been minimal.  It would also be less of a fiscal and administrative burden for Respondents to return Petitioner home to await a determination on his immigration proceedings than to continue to detain him.  *See Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit has recognized that the costs to the public of immigration detention are staggering.").

The Court finds that, under these circumstances, Respondents were required to provide notice and a pre-deprivation hearing.  The United States Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property."  *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original).  The Court describes post-deprivation remedies as the "special case" where those are "the only remedies the State could be expected to provide."  *Id.* at 129.  Respondents have not provided any substantive opposition to the contrary, nor do they argue that Petitioner should be a "special case."  (*See* ECF No. 6.)

Respondents did not provide notice or a pre-deprivation hearing.  Nor have Respondents provided a post-deprivation hearing in nearly three months of detention.  Therefore, Respondents

7

violated the Fifth Amendment and Petitioner's procedural due process rights.

**IV.   CONCLUSION**

Petitioner is detained in violation of the Constitution and federal law and he must be released.  *See* 28 U.S.C. § 2241(c)(3).  Accordingly, IT IS HEREBY ORDERED:[3]

1.  The Petititon for Writ of Habeas Corpus (ECF No. 1) is GRANTED.

2.  Respondents must IMMEDIATELY RELEASE Petitioner ANDY ALEXANDER M. A. (A# 246-895-116) from custody under the same conditions he was released prior to his current detention and must return all Petitioner's documents and possessions at the time of release.  Respondents shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing.

3.  **Respondents must file a notice of compliance with this Order by March 25, 2026.**

4.  To avoid further irreparable harm and protect the public interest, Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk.  At any such hearing, Petitioner shall be allowed to have counsel present.

5.  The Clerk of the Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: March 23, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

---

[3]   Petitioner also seeks an award of attorney's fees and costs under the Equal Access to Justice Act.  (ECF No. 1 at 9.)  The Court will consider any timely filed request for fees and costs on a properly noticed and supported motion.

8